### KENNEDY *vs* DEAR.

1. A defendant in an action of slander, can not shew the truth of the words charged as slanderous, in mitigation of damages ; but any facts or circumstances, which will rebut or repel the presumption of malice, are properly admissible under the general issue.

2. Malice is essential to be shewn, in an action of slander; and therefore, where a defendant had charged plaintiff with perjury, for having used the term "violent," in an affidavit, describing an assault and battery, committed by defendant on plaintiff, the legal import of which term appears to have been misapprehended,—it may be shewn, in mitigation of damages, and to rebut the presumption of malice, that defendant uttered the slanderous words with reference alone to his understanding of the plaintiff's use of the term, "violent."

3. A justice of the peace; who is a witness in a cause, may be asked whether he has had any particular case before him, but may not speak of the papers connected with the suit, unless they are produced.

---

*9 Johns. 162—2 Caines, 183         †15 Mass. 495
        ‡2 Seargt. & Rawle, 565.

4. The usual and ordinary mode of proving the official character of a justice of the peace, who is a witness in a cause, is, by his own oath, and this is the usual mode in all cases, except in suits against himself.

Error to the Circuit court of Wilcox.

Case, for words spoken. Bradley Dear complained of Jonathan Kennedy, that, whereas the said plaintiff was a good, true, honest, just and faithful citizen, and as such, had always behaved and conducted, and until the committing, &c., was always reputed, esteemed and accepted as a person of good name, fame and credit, and had never been guilty, or suspected to have been guilty of perjury or any other such crime. By means of which, before the committing of the grievance by defendant, as hereinafter mentioned, he had deservedly obtained the good opinion and credit of all his neighbors, &c. And whereas a certain cause had been depending before the committing, &c. in a Justice's court, before one Abijah Miller, esquire, a justice of the peace, &c. sitting at the court-house, in a cause, wherein the State was plaintiff, and Jonathan Kennedy, defendant, and charged with an assualt and battery; which said cause had been then lately tried at the court-house, to wit, on the fifth day of August, eighteen hundred and thirty-four--and on the said trial, the said plaintiff had been and was examined, on oath, as a witness, by the said justice, and had given his evidence as such, for and on the part of the State, to wit, on said fifth of August. Yet, the said defendant, well knowing the premises, and envying, &c., and contriving to injure plaintiff in his good name, fame and credit, and bring him into public scandal, infamy and disgrace amongst the neighbors; and to cause it to be suspected, that he was guilty of perjury, and to subject him to the pains and penalties of the laws, made,

provided against, and inflicted on persons guilty thereof; and to vex, harrass, oppress, impoverish and wholly ruin plaintiff: theretofore, to wit, on said fifth day of August, and on divers other days, before that time, falsely and maliciously, in a certain discourse, which defendant then and there had with plaintiff, in, of, and about the trial aforesaid, in the presence and hearing of Benjamin Miller, and divers citizens, falsely and maliciously spoke and published, of and concerning plaintiff, these false, scandalous, malicious and defamatory words, that is to say,—"You, (meaning plaintiff,) committed *perjury*," on the trial, as aforementioned, before the aforesaid justice : meaning, that plaintiff, in giving testimony, as a witness, on the trial before the justice, had perjured himself, and was guilty of wilful and corrupt perjury.

And afterwards, on the same day, in another discourse, about the same trial, in the presence of divers citizens, and in their hearing, spoke and published these other false, &c. words,—"You swore a lie, on the trial, before Abijah Miller—and I can prove it:" meaning that plaintiff had perjured himself, as a witness, in giving testimony, in the cause aforesaid, &c., and that defendant could prove it.

And afterwards, on the same and other days, in another discourse about the same trial, in the presence of diverse citizens, and in their hearing, spoke and published these other false, &c. words,—"You swore falsely in giving your evidence on the trial, and I can prove it:" meaning that plaintiff had perjured himself, as a witness, in giving testimony in the cause aforesaid, &c.; and that defendant could prove it.— By means, whereof, &c.

To this declaration there were pleas, the general issue, and the statute of limitations,—and a general demurrer.

And at May term, eighteen hundred and thirty-five, the defendant's demurrer to plaintiff's declaration

having been argued by counsel, and considered by the court, it seemed to the court proper, that the demurrer should be sustained. It was therefore, ordered by the court, that the demurrer should be sustained ; that the plaintiff have leave to amend his declaration ; and that the cause should be continued to the next term.

And at the fall term of the same court, the defendant had leave to plead to plaintiff's declaration, as amended. Defendant then demurred generally, and the demurrer being argued, and considered by the court, it seemed to the court that the said demurrer should be sustained, and that the plaintiff should have leave to amend, upon the payment of costs, &c.

And at the Fall term of the same court, eighteen hundred and thirty-six, the defendant's further demurrer to plaintiff's amended declaration, being argued, and considered by the court,—it seemed to the court, that the demurrer should be overruled; and the defendant had leave to plead over, on paying the entire costs of the term : and thereupon came a jury, who, upon their oaths, said they found for the plaintiff, and assessed his damages at three hundred dollars. It was therefore, considered by the court, that the plaintiff recover, &c. his damages and costs—and that execution might issue, &c.

The bill of exceptions stated, that on the trial of the case, the plaintiff proposed to prove by a witness, that he was an acting justice of the peace. To this mode of proving official character, defendant objected; but the court overruled the objection, and the question was asked and answered. Plaintiff then asked the witness, if he had ever had before him a case of *The State vs Bradley Deur.*—To this defendant objected ; but the court overruled the objection, and the witness answered, *he had ;* and then proceeded to identify the papers produced as the affidavit, warrant, &c., taken and issued by him, &c. The affidavit was

stated by the justice, to be the form taken from the "Alabama Justice," in like cases.

The defendant offered to prove, that when this affidavit was presented to the plaintiff, to be verified, he objected to its terms, stating that the assault and battery was not, in fact, a violent one, as averred in the affidavit; but a mere chucking under the chin, or something to that amount: but, that on the justice informing him, it was in the form required in such cases, &c. he swore to it; and that it was, on reading the terms of said affidavit, and without information as to the explanation before the justice, that the defendant uttered any slander, which may have been spoken of the plaintiff.

To the introduction of such parol proof, the plaintiff objected, and the court excluded it, on the ground, that it was a circumstance, going to shew, that plaintiff was guilty of perjury; though it was stated by defendant's counsel, that the object in view was in mitigation of damages. To all which defendant excepted, &c.

The plaintiff in error assigned—

1. That the court erred in the matter stated in the bill of exceptions.

2. The court erred, in overruling the demurrer to the plaintiff's declaration.

*Hopkins and Bedford*, for plaintiff in error.
*Porter*, contra.

GOLDTHWAITE, J.—Bradley Dear instituted this action of slander in the Circuit court of Wilcox, and in his declaration, charged Jonathan Kennedy with having uttered of him, the words, "You committed perjury," with a colloquium, stating them to have been spoken in reference to a cause, wherein the State of Alabama was plaintiff, and the said Kennedy was defendant, on a charge of assault and battery; which

cause had been then lately tried, before one Miller, a justice of the peace. The defendant demurred to the declaration, and the demurrer being overruled by the court, he pleaded not guilty, and the statute of limitations, on which issue was joined, to the country, and a verdict returned, for the plaintiff.

On the trial of the case, the defendant tendered a bill of exceptions to the admission of certain evidence, on the part of the plaintiff, and the refusal to admit other evidence, on behalf of the defendant—which may all be stated as follows :—

1. The Circuit court permitted a witness to prove that he was an acting justice of the peace, without any evidence being produced, to shew his official character.

2. The same witness was permitted to state, that a certain case of *The State vs Bradley Dear*, had been before him.

3. The witness having proved an affidavit made by plaintiff, the defendant offered to prove, that when the same was presented to the plaintiff, to be verified, he objected to its terms, stating that the assault and bat-tery, was not, in fact, a violent one, as averred in the affidavit; but a mere chucking under the chin, or something like that: but that, on the justice informing him, that it was in the form required in such cases, he swore to it,—and that it was on reading the terms of said affidavit, and without information, as to the explanation before the justice, that the defendant uttered the slanderous words imputed to him.

This evidence the Circuit court excluded, for the reason that the circumstances tended to shew, that the plaintiff was guilty of perjury ; although it was stated, by defendant's counsel, to be offered in mitigation of damages.

It is now assigned as error, that the Circuit court erred in overruling the demurrer to the declaration, and in the several matters excepted to on the trial.

It is contended, that the declaration shows a case, in which a justice of the peace, had no authority, and therefore, an oath administered by him, in the course of it, was extra-judicial,—and the defendant would be discharged from any liability for slanderous words imputed to him, if they referred to an oath so administered.

If a defect in the jurisdiction of the justice of the peace was apparent on the record, this position would be properly assumed; but in our opinion, the case which is stated in the declaration, only refers to an examination or prosecution, for, and on a charge of assault and battery, and not an extra-judicial trial, for that offence, before a court, without jurisdiction. This objection can not, therefore, avail, and there was no error in overruling the demurrer.

1. The first exception, as to the incompetency of the evidence offered, to establish the official character of the justice of the peace, can not prevail. This is the usual and ordinary mode of proof in all cases; when the act of an officer has to be proved, except as in suits against himself. *Berryman vs Wise;* [*] *Potter vs Luther;* [†] *Bullock vs Wilson.* [‡]

2. The next exception is, that the justice was permitted to state, that he had had before him the case of *The State vs Bradley Dear.* If we were not satisfied, from the context of the bill of exceptions, that the name of Dear is here substituted for that of Kennedy, we should decide; that any inquiry relating to such a suit, without shewing the relevancy of the inquiry, to the case before the court, would be irregular and erroneous; but from what immediately follows the statement of this matter in the bill of exceptions, we are induced to believe, that the inquiry was

---

[*] 4 Term Rep. 366.          [†] 3 Johns. Rep. 431.
[‡] 5 Porter, 332.

made of a suit, against Kennedy; for, when the affida-vit was introduced, and the witness asked if Dear did not object to its terms, before he would verify it, the bill of exceptions evidently refers to the same proceedings; and it would be absurd, to suppose that Dear was about to swear against himself. From this circumstance, we feel compelled to infer, that the one name has been substituted for the other, by a clerical mistake, either in transcribing or framing the bill of exceptions. Assuming this to be the case, there was no error in the justice being asked the question; but he would not be permitted to speak of the papers con-nected with the suit, unless they were produced.

3. The only remaining exception, to be examined, is that which refers to the rejection of the evidence proposed to be given, of what Dear said, when the af-fidavit was presented to him, to be verified : and, it is not easy to perceive, on what principle this evidence could be refused. The legal effect of it, was evident-ly misconceived, by the Circuit court.—So far from this evidence having a tendency to induce the belief that Dear had sworn or was willing to swear to a falsehood, it proves that he was unwilling to use a word of doubtful import, the meaning of which might be misunderstood or misconstrued to the injury of an-other.

If the use of the word "violent," in its legal accep-tation, struck the imagination of Dear, as not proper-ly applicable to the outrage committed on his person, we need not be surprised, that it should have excited the indignation of Kennedy, when the affidavit was, for the first time shewed to him; and if, as set forth in the bill of exceptions, it was on reading the affida-vit, that the words were spoken of Dear, in relation to the use of the term "violent," it would go far to re-but the presumption of malice.

But, although Kennedy might be, in some measure

excused, if the expression used by him, was made a-lone with reference to his understanding of the meaning of the word—yet, if, after cool reflection had intervened, he should have repeated the exceptionable words, under the hope and expectation, that he could find shelter or immunity from such a cause, the law will give no countenance to such an excuse.

Malice is essential to be shewn in actions of this description—and may be, and usually is, infered from the falsity of the words; but there is some excuse for the individual, who, mistaking the meaning of the word, rashly accuses his adversary of perjury, with reference to a peculiar meaning given by him, to the oath taken—when there is none for him, who will endeavor to cloak his malignity, by taking refuge behind an inadvertent expression, or even a mistake of the fact sworn to.

In the case under consideration, all the circumstances attendant on the publication of the words spoken, were matters proper to be left to the consideration of the jury, as from the circumstances as well as from the words themselves, was the presumption of malice to be raised, or to be rebutted. *Van Rensellaer vs Dale.†

In our opinion, the point is not presented, how far it is competent for a defendant, on the plea of not guilty, to shew facts and circumstances, from which the truth of the charge, as made, might be inferred; but the principle is recognised and admitted, that a defendant cannot shew the truth, in mitigation of damages—but any facts or circumstances, which will rebut or repel the presumption of malice, are properly admissible, under the general issue.—*Grant vs Hover.‡

The Circuit court, therefore, erred, in excluding

*2 Starkie on Evidence, 881 ; ib. 873.
†1 Johnson's Cases, 279 ; 2 Starkie on Evidence, 862, 863.
‡6 Munn. 14 ; 2 Starkie on Evidence, 877.

the evidence, covered by this exception; and for this cause, the judgment rendered must be reversed, and the cause remanded.