## PIERCE *vs.* HALL.

If all the steps are legally taken, in assessing taxes and returning them as unpaid, that are required, to give the comptroller power to advertise the land for sale, the omission of the town clerk, at town meeting, to give notice, according to the statute (1 *R. S.* 931, § 76, *5th ed.*) that lists of the land advertised for sale by the comptroller, for unpaid taxes, have been deposited in his office, will not render all the other proceedings nugatory, and make void a title obtained under the sale.

One whose right to wild and uncultivated land purchased at a comptroller's sale for taxes, has become absolute; who is entitled to a deed from the comptroller; and who has all the actual possession that it is usual to take of that species of lands, may, *it seems,* maintain an action against a stranger for carrying away logs therefrom. He may at least, by virtue of such possession defend his title to the logs, or defeat an action brought against him by the trespasser, for their value.

The doctrine of *relation* being a fiction of law, is to be resorted to only for the advancement of justice; and has not been adopted as a rule when third persons who are not parties or privies might be prejudiced thereby. *Per* POTTER, J.

Whether a comptroller's deed of land sold for taxes, vests the title in the purchaser, by relation back to the time when the sale became absolute, so as to entitle him, as against a trespasser, to repossess himself of any property tortiously severed from the freehold? *Quære.*

THIS was an action to recover the value of 145 saw logs by count, making 45 standard logs, of the value of seventy cents each, brought originally in a justice's court. On the plea of title being interposed, the action was brought to this court, and tried at the Clinton county circuit, before Justice JAMES, without a jury. The plaintiff had these logs in his possession on lot No. 42, town of St. Armand, Essex county, on the 14th of March, 1861, and on that day the defendant forcibly took them away. The logs were cut, as found by the judge, from lot No. 23, old military tract. Sixty pieces, equal to nineteen standard, were cut and drawn before the 27th day of February, 1861, and the balance before the 14th of March, 1861.

Said lot No. 23 contained 160 acres. Forty acres in the northwest corner, in a square form, had been conveyed previous to 1852, and the plaintiff showed title to sixty acres in

Pierce *v.* Hall.

a square form around forty acres in the northwest corner, by comptroller's deed, dated February 7, 1855, in pursuance of a sale in 1852.

The defendant showed title by a comptroller's deed, bearing date February 27, 1861, in pursuance of a tax sale in 1853, which became absolute in November, 1855; of all of said lot No. 23, except forty acres in square form, in the northwest corner of said lot. That all the logs were cut south and east of 100 acres in square form, including the northwest corner, and not on the sixty acres covered by the plaintiff's deed. That no notice of the tax sale, under which the defendant claims, was given by the town clerk, as required by 1 *R. S. 5th ed. p.* 931, § 76; the annual town meeting being held in March. That the logs were not so intermingled by the plaintiff, as to prevent the sixty cut and drawn before the defendant's deed was executed from being distinguished from the others.

From these facts the judge found as conclusions of law as follows: 1st. That the comptroller's deed, under which the defendant claims title, was valid, and passed the title of lot No. 23, on which the logs were cut, to him. 2d. The comptroller's deed to the defendant vested the title in the defendant, by relation back to the time when the sale became absolute, so as to entitle him, as against a trespasser, to repossess himself of any property tortiously severed from the freehold. 3d. That the complaint be dismissed, and that the defendant have judgment for costs. From this judgment there was an appeal to this court.

*G. M. Weed,* for the appellant.

*Beckwith & Johnson,* for the respondent.

*By the Court,* POTTER, J. Assuming the facts as found by the judge at the circuit to be correct, and as I think the testimony justifies him in finding, the questions to be exam-

ined are very much narrowed down, and the facts may be simply stated thus: 1st. The logs in question were cut upon that part of lot number 23, to which the plaintiff had *no* title, and he had *no* license from any one who had title thereto. 2d. The defendant obtained his deed from the comptroller on the 27th February, 1861, and sixty of the logs in question were cut before the date of that deed, and drawn off upon lot 42, and the remainder *after* the plaintiff's deed was delivered to him.

The first legal question that arises is, did the defendant show title to the lot on which these logs were cut ? As against a wrongdoer, I think he did. The plaintiff did not even show a possession or a license to enter upon that part of the premises, except such as a trespasser takes, and the defendant's deed was good against that, for all the logs cut or drawn after its date, and had the plaintiff shown himself in a condition to question the defendant's right, as I think he did not, the only pretense of attack upon a title which the statute declares presumptively good is the omission of the town clerk, at town meeting in the year 1854, to give notice, according to the statute, (1 *R. S. 5th ed.* 931, § 76,) that lists of land advertised for sale by the comptroller, had been deposited in his office. This omission of the town clerk to perform a statute duty at town meeting, had there been one, (as it seems there was not that year,) can hardly be claimed to be a fundamental defect that would render void all other proceedings in the case. If, as we are bound to presume, all the steps were legally taken in assessing and returning the taxes as unpaid that are required to give the comptroller power to advertise, the omission of this *directory* duty of a subordinate officer would not render all other acts nugatory, and make void the title obtained under the sale. This point is not, therefore, well taken.

The tax sale, under which this deed of the defendant was given, was made in 1853, and the right under the sale became absolute, in November, 1855, at which time the purchaser or

Pierce *v.* Hall.

his assignee was entitled to a deed;—the assignee to all the rights his assignor had. He omitted to take this deed until 27th February, 1861. The questions under this point are, 1st. Did the absolute right of the defendant to this property, and to the deed, give him such a title to it as to enable him to sue a stranger for injuries done to it? or, 2d. Did the deed executed to the defendant by the comptroller, in 1861, relate back to the time when his right became absolute, so as to enable him to maintain an action against a naked trespasser for injuries done prior to its date? In equity, the defendant by his contract with the state, having paid the full consideration, and received his certificate of right, and in all other respects having fully performed his contract as vendee, was, I think, entitled to the possession, and to the legal title. As was said in *Paine* v. *Meller*, (6 *Ves.* 353,) " the property was vendible as his, chargeable as his, capable of being encumbered as his, and devised as his." And it may be added, would descend to his heirs if he died intestate; and it was wild and uncultivated land. He had all the actual possession that it is usual to take of that class of land; all that he would have, had the deed been executed in November, 1855; and it has been frequently held that the *title* to wild and uncultivated lands by construction draws to it the possession; and it was sufficient possession, I think, as against a stranger and trespasser, to have maintained an action for the logs removed therefrom; or, at all events it was sufficient to defend his title to the logs, or to defeat an action brought against him by the trespasser who had removed them, to recover for their value. In *Harker* v. *Birbeck*, (3 *Burrow*, 1563,) Ld. Mansfield held that when there was doubt about the right of possession, a writing relating to such right may be given in evidence, even though it creates only an *equitable* interest; and an *equitable title* could give possession. And in *Graham* v. *Peat*, (1 *East*, 246,) Lord Kenyon, Ch. J. said, " *any possession* is a legal possession against a wrongdoer;" even one less than sufficient to maintain ejectment. In *Gardner* v.

*Heartt,* (2 *Barb.* 170,) the court said, " When the property is in the *actual* custody of no one, the constructive possession is in the general owner, and he may sue for an injury, as for an injury to his own actual possession against a person making no claim to title or possession." Had the defendant removed the logs from the *premises,* lot No. 23, the plaintiff would have failed to recover had he sued in such case, for a defect in proving his possession, or right of possession, or title to the premises, and property. He would only have proved himself a tort feasor, which confers insufficient title to maintain an action, and I know no title that can be acquired to property by the tortious act of removing it from the true owner's possession, or against the owner's rights. The plaintiff failed in this case to show title in himself to the property in question.

2d. The doctrine of *relation* is claimed by the defendant to apply to his deed; that is, that the defendant's deed, when executed, related back to the time when the right to it was absolute; to wit, November, 1855, so as to give the defendant all legal rights to the estate as if executed in 1855. In judicial sales, as between parties and their privies, this is no doubt the rule, and so too when the deed is executed in pursuance of a previous contract; for the purpose of upholding an intermediate estate; and there are other cases, where the doctrine of relation applies; but the doctrine of relation being a fiction of law, is to be resorted to only for the advancement of justice; and has not been adopted as a rule where third persons who are not parties or privies might be prejudiced thereby. Besides, it is by statute (1 *R. S.* 5th ed. 934, § 99) declared that *a conveyance* by the comptroller shall vest in the grantee the absolute estate in fee simple. This means the legal estate; and from the date of this deed, the defendant's title is presumptively good against all the world, and can only be impeached for omission, to be shown, rendering it void, which has not been done in this case. If the grounds I have above taken are correct, it is not necessary to decide that

the comptroller's deed relates back to the time when the right to it was absolute. I do not feel quite confident that the learned judge below was right upon that point. I am clear, however, that he was right in the result, and am for affirming the judgment, for the reasons herein given.

[Schenectapy General Term, January 5, 1864. *Potter*, *Boçkçs* and *James*, Justices.]