# CASES

IN THE

# SUPREME COURT OF ALABAMA,

DECEMBER TERM, 1882.

## Burns *v.* Campbell.

*Trespass de bonis asportatis by Mortgagor against Mortgagee.*

1. *Mortgage of personal chattels; right of mortgagee to possession.* After default in the payment of a debt secured by mortgage, the mortgagee has the legal title and the right of immediate possession of chattels conveyed by the mortgage, authorizing a recovery thereof by him; and his right of possession is not affected by partial payments previously made by the mortgagor on the secured debt, unless it is so provided in the mortgage.

2. *Usury not available to mortgagor in trespass.*—In an action of trespass brought by a mortgagor against the mortgagee, for seizing personal property conveyed by the mortgage, usury is not available to the plaintiff for the purpose of showing, in connection with evidence of partial payments, that the mortgage debt has been paid, and the mortgage satisfied.

3. *Same.*—While a chattel mortgage is satisfied, and its lien extinguished, by payment of the mortgage debt, and a seizure by the mortgagee of the mortgaged property, after such payment, would constitute him a trespasser; yet, in an action of trespass brought against him by the mortgagor, founded on such seizure, no collateral investigation can be had into the usurious character of commissions charged by the mortgagee, who was a commission merchant, for selling cotton conveyed by the mortgage, in accordance with the terms thereof, for the purpose of showing a payment of the debt.

4. *Advances by mortgagee; what prices he may charge therefor.*—Under a mortgage securing future advances, the mortgagee is entitled to such prices as may be agreed on, or, in the absence of an agreement, to a fair and reasonable market valuation, estimated at the time and place of sale, and hence, evidence of prices paid by the mortgagee, purchasing at wholesale at another time and place, is inadmissible.

5. *Account stated; presumption of correctness.*—If an account is rendered to a debtor, and he admits its correctness, or retaining it, he makes no objection thereto within a reasonable time, he will be bound by it as an account stated, his silence in the latter event being an implied admission of its correctness; and if he only objects to one item, this is an admission of the correctness of the other items of the account.

[Burns v. Campbell.]

6. *Parol mortgage; what is.*—A verbal agreement between a mortgagor and mortgagee, made after the execution of the mortgage, that it should embrace a horse furnished to the former by the latter, and stand as security for the price thereof, is valid, at least, *inter partes*, as a parol mortgage; and, in an action of trespass by the mortgagor against the mortgagee for seizing other chattels conveyed by the mortgage, the fact that the horse belonged to the mortgagee's son, who was also his agent, is not available to the plaintiff for the purpose of reducing the mortgage debt, and of showing that it was paid, if the son consented to such a disposition of his property.

7. *When commissions agreed to be paid for selling mortgaged cotton not affected by sale through a broker at a lower rate.*—Nor can the mortgagor, in such action, be heard to complain, that the mortgagee, who was a commission merchant, employed a broker to sell for him the cotton shipped to him by the mortgagor, at a lower rate of commissions than that which the mortgagor agreed to pay him.

8. *Chattel mortgage with power of sale; right of mortgagee to take possession under.*—When any part of the debt secured by a chattel mortgage containing a power of sale, remains unpaid, the mortgagee may execute the power by taking possession of the mortgaged property, provided he does so without committing a breach of the peace, or violation of the criminal law.

9. *Confusion of goods; doctrine applies to mortgaged chattels.*—Where the owner of goods willfully, or through want of proper care, so mix or mingle them with the goods of another, that they can not be distinguished, the latter is entitled to the whole, unless he consented to the act; and this principle applies to mortgaged chattels, and a confusion thereof by the mortgagor with other chattels owned by him makes the whole *prima facie*, at least, subject to the lien and operation of the mortgage.

10. *Mortgage of after-acquired property; when no specific lien thereby created.*—A mortgage of property to be thereafter acquired, which is not the product, increase, or accretion of something already owned by the mortgagor, especially when only general terms of description are used, creates no specific lien on such after-acquired property, but is merely an agreement to execute a further mortgage.

11. *Trespass de bonis asportatis by the husband; damages to goods of the wife can not be recovered in.*—In trespass by the husband against his mortgagee for an alleged illegal seizure of goods under the mortgage, the plaintiff can not recover damages for a seizure of goods belonging to the *corpus* of the wife's statutory separate estate; but for such damages the wife must sue alone.

12. *Amendment by adding parties defendant; when not allowed.*—The statute authorizing an amendment of the complaint, by striking out or adding parties plaintiff or defendant (Code, § 3156), can not be construed so as to authorize the addition of parties defendant, who were not liable to be sued when the action was commenced, although they may have afterwards rendered themselves liable to the same action.

13. *Same; principal ratifying trespass by agent after suit brought, can not be made defendant.*—If an agent, acting in the name, and for the benefit of his principal, commits a trespass *de bonis asportatis*, which imposes a civil, and not a criminal liability upon the agent, the principal may, when fully informed of the tortious nature of the act, adopt and ratify it; and such ratification, for many purposes, will relate back to the date of the unauthorized act, so as to constitute the principal a trespasser *ab initio*, ordinarily binding him to the same extent and imposing on him the same civil responsibilities as if he had originally authorized it; but this doctrine of relation, being a mere legal fiction, and allowed only for the advancement of right and justice, can not be so applied as to authorize the principal to be made a party defendant by amendment to a

[Burns v. Campbell.]

suit brought against the agent for such trespass, and commenced prior to his ratification of the agent's act.

14. *Trespass by agent; ratification by principal.*—To hold the principal responsible for damages resulting from a trespass *de bonis asportatis*, which is not indictable, on the ground of a subsequent ratification by him of the agent's wrongful act, it must appear that he ratified such act, with a full knowledge of its tortious character; and the mere appropriation of the fruits of the trespass, without such knowledge, is not sufficient.

15. *Principal and agent; ratification by principal of agent's act.* Where the relation of agency exists, and the principal derives a benefit from an act done by the agent beyond the scope of the agency, he will be held to have ratified such unauthorized act by *acquiescence*, if, after being fully informed of what has been done, he fails to express his dissatisfaction within a reasonable time; but where the relation of agency does not exist when the act is done, but the act is that of a mere volunteer awaiting ratification, the silence of the principal will not be so readily construed into a ratification, except, perhaps, in cases where it might operate to the prejudice of innocent parties.

16. *Same; declarations by principal to agent, verbal acts and competent.* The declarations of the principal, when first informed of the seizure of the goods by his agent, ordering them to be returned to the plaintiff, and his message to his acting agent, instructing him to have nothing more to do with the goods, are in the nature of verbal acts, tending to show a repudiation of the agent's act, and are competent evidence for the principal in a suit against him and the agent for trespass growing out of such seizure.

17. *Evidence; question calling for mental status of party, illegal.* Where the principal is examined as a witness in his own behalf, in a suit brought against him for a trespass committed by the agent, a question propounded to him, by which he is asked whether, on being first informed of the trespass, "he approved or disapproved of it," would be irrelevant, if propounded with the view of eliciting a mere *mental* approval; unaccompanied by acts or words; and being ambiguous, and it not affirmatively appearing whether the answer would have been legal or illegal evidence, the primary court did not err in disallowing the question.

18. *Principal and agent; ratification by principal of agent's trespass.* If the principal, in good faith, and by suitable acts and declarations, repudiated the seizure of goods made by his agent under, and in execution of a power of sale contained in a mortgage executed by the plaintiff to the principal, the law would not make it incumbent on him to actively interfere to compel restoration of the goods to the plaintiff, unless they had come into his custody, or under his control. His failure, however, to counsel restoration, or to re-assert control over the mortgage under which the seizure was made, if satisfactorily proved, may be looked to by the jury, as tending to prove acquiescence.

19. *Same.*—In all cases of trespass by an agent, for which the principal is sought to be held liable on the ground of a subsequent ratification by him of the agent's act, the law requires, with good reason, "substantial proof of ratification."

20. *Evidence; res gestæ.*—In an action of trespass by the mortgagor against the mortgagee and his agent for a seizure, under a power of sale in the mortgage, of mortgaged chattels, the written notice of the sale, and the sale itself of the chattels by the agent, are admissible in evidence, being merely cumulative evidence of the intention of the agent in taking the goods, and, as such, a part of the *res gestæ* of the alleged trespass, shedding light on the dominion over the goods previously asserted.

21. *Trespass de bonis asportatis; measure of damages.*—In trespass

[Burns v. Campbell.]

for taking goods, if the taking is merely unlawful, the measure of damages is, generally, the value of the goods, or amount of injury done to them, as the case may be, with interest to the date of judgment; but if the taking is perpetrated in a rude, wanton, reckless, or insulting manner, or is accompanied with circumstances of fraud, malice, oppression, or aggravation, or even with gross negligence, the party injured is entitled to receive exemplary damages.

22. *Same; malice of agent as affecting damages against principal.* The rule is, that, where several defendants are sued in tort for damages, the malice or other evil motive of one can not be matter of aggravation, or ground of vindictive damages against the other; and hence, principals are not generally held liable for such damages by reason of the evil motive of the agent, unless the act of the agent was fully ratified with a knowledge of its malicious, aggravating, or grossly negligent character; or these matters of aggravation were probably consequent on the doing of the wrongful act ordered by the principal; or unless the agent was employed with a knowledge of his incompetency.

23. *Evidence; when letter by agent is admissible in action of trespass against principal and agent.*—In an action of trespass against principal and agent, for the seizure by the agent of plaintiff's goods, a letter written by the agent two days before the seizure, directed to the plaintiff, and received by him in due course of mail, and endorsements made on the envelope by the agent, evincing an unfriendly feeling towards the plaintiff, is relevant and competent, on proof of handwriting, as tending to show malice or an evil motive on the part of the agent, which may have entered into, or given color to the transaction.

24. *Trespass; evidence of malice; when inadmissible.*—In trespass against principal and agent, founded on the seizure by the agent of goods of the plaintiff under a mortgage to the principal, where it is sought to charge the latter by reason of a subsequent ratification of the agent's act, the fact that the principal commenced a criminal prosecution against the plaintiff about the time of the seizure, is not competent evidence for the plaintiff, in the absence of all evidence tending to show the principal's original participation in the agent's act, or that he originally authorized it, although such fact may tend to show malice against the plaintiff on the part of the principal. In such case, the prosecution is not a part of, or connected with the transaction alleged to have been ratified, and the malice, standing alone, is not competent to authorize the inference, that the principal conferred an original or previous authority upon the agent to make the seizure.

25. *Same.*—In such action it is not competent for the plaintiff to show, by way of aggravation of damages, that he had a family, consisting of a wife and several minor children, at the time of the seizure of his goods by one of the defendants.

26. *Trespass; when destitute condition of plaintiff's family, caused by the trespass, not competent evidence.*—Nor is it competent, in such action, to show that the plaintiff's family, then at a distant place, to which plaintiff intended moving, were in a destitute condition as to clothing, bedding or furniture, caused by the seizure of his goods by the defendant, without proof of knowledge by, or notice to the defendant of such condition at the time the goods were seized; but the knowledge of such facts by the defendant, or information charging him with notice thereof, would tend to show an evil motive, such as would constitute a circumstance of oppression or aggravation.

27. *Trespass; good or bad faith an issue, when punitive damages are claimed; what evidence is competent to show good faith.*—Exemplary damages being punitive and preventive in their purpose, as well as compensatory, the good or bad faith of the defendant is always a vital issue where such damages are claimed; and hence, in an action of trespass brought by a mortgagor against a mortgagee and his agent for the seizure

[Burns v. Campbell.]

by the agent of goods under power of sale contained in the mortgage, it is competent for the defendants to show, in mitigation of exemplary damages claimed in the action, that the agent had good reason to believe and did believe, that a part of the mortgage debt remained unpaid, and that the goods seized under the mortgage belonged to the plaintiff, and were conveyed by the mortgage; but such evidence is not admissible in mitigation of actual damages.

28. *Witness; conviction of petit larceny renders infamous and incompetent.*—The conviction of a person for petit larceny before a justice of the peace having jurisdiction, renders him infamous and incompetent to testify as a witness.

29. *Justice of the peace; judgment of conviction in criminal case before; how proved; § 3634 of the Code construed.*—A justice's court not being a court of record, a certified transcript of a judgment rendered therein is not legal evidence, unless so made by statute; and the statute (§ 3634 of the Code) making a certified statement of a justice's judgment presumptive evidence of the fact, having no reference to judgments of conviction in criminal cases, but being limited in its operation to judgments in civil suits, a justice's transcript of a judgment of conviction in a criminal case before him is not admissible in evidence. Such judgment can only be proved by the production of the original papers and docket, sustained by competent evidence of identity, or by sworn copies compared by a competent witness.

30. *Witness; conviction before mayor of Selma for violation of ordinance against larceny, does not render incompetent.*—A conviction of a person before the mayor of the city of Selma for a violation of an ordinance of the city against larceny, does not render him infamous and incompetent as a witness; and such mayor having, under the charter of that city, the jurisdiction of a justice of the peace, in criminal cases, and it not appearing whether such person was convicted by the mayor, sitting *ex officio* as a justice of the peace, of an offense against the State, or whether he was convicted merely of the violation of a municipal ordinance, evidence of such conviction was properly excluded from the jury.

31. *Pleading; what amounts to general issue.*—A defendant can derive no greater benefit from an agreement of parties, that all matters which can be specially pleaded may be given in evidence under the general issue, than he could enjoy under the general issue without such agreement.

APPEAL from the City Court of Selma.

Tried before S. W. JOHN, Esquire, an attorney of the court, selected by the clerk under the provisions of § 18 of Art. VI. of the Constitution, the presiding judge having been, for legal cause, incompetent to try the cause.

This was an action of trespass *de bonis asportatis*, brought by Jasper N. Campbell against John F. Burns and Dick Hill; and was commenced in the Circuit Court of Dallas county on 18th January, 1875. At the spring term, 1876, of said court the plaintiff amended his complaint by adding James H. Burns as a party defendant; and afterwards the cause was transferred to the City Court of Selma. Dick Hill did not appear or defend. James H. and John F. Burns appeared and pleaded the general issue "with leave to give in evidence any matter that might be specially pleaded or replied," and the cause was tried on issue joined on that plea; the trial resulting in a verdict and

judgment for the plaintiff against all the defendants. The term "defendants," as hereinafter used, applies only to James H. and John F. Burns.

As shown by the evidence, the plaintiff, being engaged in farming on lands rented from James H. Burns, near Burnsville, in Dallas county, on 3d March, 1874, gave his note to the said Burns, who was a commission merchant in the city of Selma, for advances, made and to be made during that year, and, to secure the note and such other advances as he might obtain, he, on the same day, executed a mortgage on his crops, and on a mare, "together with all his effects of every description." The terms and provisions of this mortgage are sufficiently set out in the opinion. A short time prior to 25th December, 1874, after the law-day of the mortgage had passed, plaintiff left home, leaving his family, and went to Montevallo; and on the morning of 16th January, 1875, plaintiff's wife and family left Burnsville, on the train, for Montevallo, his wife having, before she left, requested one Sharpe to haul the household goods of plaintiff, which had been left at their former home, to the depot at Burnsville, and ship them to Montevallo on the evening train. Sharpe hauled the goods, and put them on the platform at the depot for shipment to the plaintiff as requested. After the goods were unloaded and placed on the platform, and while they were there awaiting shipment, in charge of Sharpe, they were seized by defendant Hill, by the direction of John F. Burns, under said mortgage, and were taken off and kept until about 16th March, 1875, when they were sold at public outcry, at Burnsville, at the instance of John F. Burns, under the power contained in the mortgage. These goods "consisted of bed-steads, beds and bedding, literary and school books, men's, boy's, women's and girl's clothing, kitchen furniture, crockery, chairs, etc.; a set of butcher's tools, some jewelry, garden seed, cotton, etc." When hauled to the depot, "the beds were tied up with ropes, the clothing mostly in three trunks, one of which was locked; some of the things [were] in a box, which was nailed up, others in barrels or boxes, which were not fastened up." The evidence tended to show that a part of these goods, "such as crockery, needles, pins, women's clothing, and some ticking, and one feather-bed," were purchased by the plaintiff after the mortgage was executed; that "these things were mixed up with his other goods in the various trunks and other packages;" and that there were also among said goods, so seized and sold, certain articles of personal property, which belonged to the *corpus* of the statutory separate estate of the plaintiff's wife. James H. Burns, who was the father of John F. Burns, was not present at the seizure or sale of said goods, but was then in Selma, where he lived.

John F. Burns then had possession of said mortgage; but it was not shown by the evidence for the plaintiff that James H. Burns ever instructed John F. Burns to seize or sell said goods.

Against the defendants' objection, the plaintiff introduced evidence tending to show the number constituting his family at the time of the seizure, and the ages and sex of his children; and that when his family left for Montevallo, and when they arrived there, they had nothing with them, except the clothes they wore and a small hand-satchel. To the introduction of this evidence the defendants duly excepted. The plaintiff also read in evidence, against the defendants' objection, a written notice of the sale which was signed by one Edmunds, who was a justice of the peace, and was posted at the instance, as the evidence tended to show, of John F. Burns, and the defendants excepted. The plaintiff, who was examined as a witness, was also allowed to testify, against the defendants' objection, that a day or two after his family arrived at Montevallo, he received a letter from John F. Burns, on the envelope of which was indorsed, in the handwriting of said Burns, and over his signature, the following words; "Get my mare, or I will get you," having reference to a mare which had been advanced to plaintiff, as hereinafter stated, as to the disposition of which by the plaintiff, and whether it had been returned to said Burns or not, there seems to have been a dispute, and there was a conflict in their testimony on the trial. To this ruling of the court the defendants separately excepted.

The defendants read in evidence an account in favor of James H. Burns against the plaintiff for advances claimed to have been made under said mortgage; and he introduced evidence tending to show that it was correct, and that there was a balance still due and unpaid thereon; that the plaintiff had been furnished with a copy of the account about 7th December, 1874, and that he had only objected to one item of $1.50 for splitting rails, which was corrected. It was shown that payment had been made on the account by sale of cotton delivered to James H. Burns by plaintiff; that a charge of $26.25 contained in the account was "for commissions on cotton not delivered;" and that another item, on the debit side of the account, of $85 was for a mare which John F. Burns let the plaintiff have in the spring or summer of 1874, under the following circumstances: "Said John F. Burns had her in possession, and the evidence tended to show that he owned her. The plaintiff proposed to buy her, and it was agreed between John F. Burns and the plaintiff, that the latter should have her for $85, and John F. Burns testified that the agreement was, that she should be considered as advanced by James H. Burns

under the said mortgage, if the latter would consent to it, which he soon after did, but the plaintiff denied this. It was further agreed that if the plaintiff was not able to pay for her at the end of the year, he might return her, paying $20 or $25 hire for her, and that under this arrangement she was delivered by John F. Burns to the plaintiff." The evidence was conflicting, as to whether or not the plaintiff afterwards returned the mare to John F. Burns. The plaintiff contended that this item was not a part of the debt secured by the mortgage, and should be deducted from the account. He also contended that the item of $26.25 for commissions, above mentioned, was usurious; and was allowed by the court, against the defendants' objection, to introduce evidence tending to show that there was usury in that and in other charges contained in the account, for the purpose of reducing the amount thereof, and of showing, in connection with the payments he had made thereon, that the mortgage debt had been paid. To the introduction of this evidence the defendants duly excepted. He was also allowed to introduce, against the defendants' objection, evidence tending to show that some of the articles charged on the account were purchased by James H. Burns at wholesale, and were charged against the plaintiff at higher prices than he paid for them, and the defendants excepted. He was also allowed to introduce, against the defendants' objection, evidence tending to show that the cotton which plaintiff delivered to James H. Burns, was sold by brokers employed by said Burns at a less rate than was charged on said account, and than he had stipulated in said mortgage to pay; and the defendants excepted.

The plaintiff was also allowed, against the defendants' objection, to read in evidence an affidavit made by James H. Burns, dated 18th January, 1875, charging that the plaintiff "did on or about the 12th day of January, 1875, sell, convey, or willfully destroy" a certain mare, two bales of cotton, and some cotton seed, on which said Burns had a mortgage; also a warrant issued by the justice of the peace for said offense, based on said affidavit; and also "proceedings in said case showing that the plaintiff was bound over in a bond of $200, to answer said charge." To the introduction of this evidence the defendants duly excepted.

The plaintiff offered to examine as a witness on his behalf the defendant Hill, and thereupon, the defendants, James and John H. Burns, for the purpose of showing that said witness was not competent to testify, offered to the court a certified transcript of the conviction of said Hill for the crime of petit larceny before a justice of the peace. To this transcript the plaintiff objected, and his objection was sustained, and the defendants excepted. For the same purpose the defendants also

offered "a book which was proven to be the record of criminal cases tried by the mayor of the city of Selma," to show that said Hill had also been convicted before said mayor of larceny; but the plaintiff objected, his objection was sustained, and the defendants excepted. Thereupon said Hill· was examined as a witness by the plaintiff.

Both James H. and John F. Burns were examined as witnesses on their own behalf. They testified, in substance, that the former gave the latter no authority or instructions to seize or sell any of said goods; that he never ratified, confirmed or adopted the seizure of said goods in any manner, shape or form; that he never, directly or indirectly, derived or claimed any benefit from the seizure or sale thereof; and that he did not know that John F. Burns intended to make any seizure. The defendant James H. Burns offered to prove by John F. Burns that a few days after the seizure, John F. met James H. Burns and told him about it; and that thereupon the latter told John F. Burns not to keep the goods, but to return them to plaintiff. The plaintiff not being present at this conversation, he objected to the testimony, and his objection was sustained, and the defendants excepted. The defendants also offered to prove by James H. Burns, that "the first time he heard of the seizure of said goods, he told the man who informed him of it, to tell John F. Burns to have nothing to do with said goods, the plaintiff not being present." To this testimony the plaintiff objected; his objection was sustained, and the defendants excepted. James H. Burns was also asked this question by his counsel: "When you first heard of the seizure,. did you approve or disapprove of it." To the question the plaintiff objected; his objection was sustained, and defendants· excepted. John F. Burns was asked this question by ·his counsel: "Did you believe that the goods were covered by the mortgage." To the question the plaintiff objected; his objection was sustained, and the defendants excepted. The evidence for the defendants also tended to show that the mortgage was· given to John F. Burns, because the plaintiff had asked James· H. Burns not to enter the charge for the mare which he had obtained from John F. Burns on the account, stating that he would settle that item with John F. Burns, and that he intended to return the mare.

The defendants "separately and severally, each for himself," reserved exceptions to the following, among other, instructions embodied in the general charge of the court to the jury: (1) "If James H. Burns bought the goods which he sold or advanced to Campbell at or about the time he sold or delivered them to Campbell, he is entitled to charge only what he paid for the goods." (2) In substance, that if the jury believed

[Burns v. Campbell.]

from the evidence that the mare which plaintiff obtained from John F. Burns, was, at the time it was delivered to him, the property of John F. Burns, then the price of the mare was not covered or secured by the mortgage; and that no agreement or understanding between James H. and John F. Burns could extend the lien of the mortgage over the property of the plaintiff, to secure the debt he owed John F. Burns individually therefor; and that if they should find that the mare was then the property of John F. Burns, they should strike the charge therefor from the account. (3) "If you find from the evidence that James H. Burns has charged Campbell more than he actually paid for selling the cotton [delivered to him by Campbell], and that he deducted this overcharge from the gross proceeds of the cotton, you should give Campbell credit for the excess, by adding the amount of the excess to the credit side of the account." (4) In substance, that if they find from the evidence that the item of $26.25, charged for commissions, was usurious, they should strike it from the debit side of the account; and that if they found that any other items of the account were tainted with usury, they should strike from the account the interest charged thereon. (5) In substance, that if, after stating the account under the rules laid down, the jury find that the mortgage debt was fully paid to James H. Burns by the plaintiff, the mortgage was extinguished and did not give any authority whatever for the seizure of plaintiff's goods. (6) "If James H. Burns was interested or concerned in the unlawful taking of plaintiff's goods, or commanded the taking of them by his agent, then he would be as guilty as though personally present, taking the goods with his own hands." (7) "If James H. Burns' agent unlawfully took plaintiff's goods for James H. Burns' use or benefit, and James H. Burns, on learning of the trespass, approved of it, or agreed to it, or ratified the wrongful act, then he would be guilty." (8) It was the duty of James H. Burns, "when he learned of the seizure, if he did not intend to ratify it, to use all lawful means to restore to plaintiff the goods taken from him, and to re-assert his control over the mortgage deed, and deprive his agent of its possession and use; and, if in fact it had been paid, to surrender and cancel it, so that it could not be used by his agent in seizing and selling plaintiff's goods. If he did not discharge this duty fully, promptly, and in good faith, then you may look to that dereliction, coupled with all the other evidence on the subject, to ascertain whether he, in fact, ratified the unlawful taking of plaintiff's goods." (9) "If the jury believe that a trespass was committed by the defendants, John F. Burns and Dick Hill, and that it was done by James H. Burns' agent for James H.'s use and benefit, but that said James H. did not

ratify the trespass until after this suit was begun, still, if the jury believe that, after he was informed of the trespass, he acquiesced in, ratified, or agreed to the trespass, he would be guilty; and in determining this question, the jury should look to all the evidence in the cause, whether of acts or declarations, occurring before or after the trespass, or before or after the suit." (10) In substance that, in arriving at the amount of damages the jury should take into consideration the condition in which the plaintiff and his wife and children were left at the season of the year, when the goods were taken, "by the taking from them of the articles which the evidence may show, were taken by the defendants." (11) In substance, that the possession of the goods by Sharpe at the depot was the possession of the plaintiff. Exceptions were also reserved to portions of the general charge touching the recovery of vindictive damages, which need not be set out.

The defendants also separately reserved exceptions to the refusal of the court to give the following, among other, charges, requested by them in writing: (1) "That the mortgage of the plaintiff to James H. Burns, introduced in evidence, by its terms and provisions, covered and included all the property and effects of the plaintiff, of every character and description; and if the jury believe from the evidence that the goods and chattels in controversy belonged to the plaintiff, and were taken under said mortgage, and by authority of James H. Burns; and that at the time they were taken, as shown by the testimony, there was any balance of the mortgage debt, however small, remaining unpaid, then the jury must find for the defendants." (2) "That until the mortgage debt was fully paid, it was the duty of the plaintiff to keep and preserve the mortgaged property separate and distinguishable from other property, so that it could be identified; and if the jury believe from the evidence that other articles and goods were mixed and commingled with the mortgaged property by the plaintiff or his agents, so that such other articles and goods could not be distinguished or separated from the mortgaged property at the time of the seizure, and that under these circumstances, and after the law-day of the mortgage, and while a balance on the mortgage debt remained unpaid, the goods and chattels in controversy, while so commingled, were taken under said mortgage, and by authority of the mortgagee, James H. Burns, then the plaintiff can not recover in this action, either for the mortgaged property, or for the other articles so commingled therewith." (3) In substance, that, if any property belonging to the *corpus* of the statutory separate estate of the plaintiff's wife was seized, the plaintiff could not recover damages for seizing such property. (4) "If James H. Burns rendered or

furnished a copy of his account on his books to the plaintiff, and if some days afterwards plaintiff said to Burns that the item of $1.50 for rails in said account was incorrect; and if that was the only item objected to, this amounts to an admission that each and every other item in said account was correct." James H. Burns also reserved exceptions to the refusal of the court to give the following, among other, charges, requested by him in writing: (1) "A principal is never liable for the unauthorized and willful act or trespass of his agent. (2) A trespass can not be committed by mere inaction; and if the defendant, John F. Burns, committed a trespass in taking the goods and chattels in controversy, the mere inaction, or failure, or inability of James H. Burns to compel the restoration of said goods and chattels, would not make him liable or responsible for the trespass." (3) "A principal is never liable for the unauthorized, willful, intentional, and malicious acts or trespasses of his agent; and if the jury believe from the evidence that John F. Burns committed a willful, intentional, or malicious trespass upon the plaintiff, by taking goods and chattels which he was not entitled to take under the mortgage, or otherwise, then James H. Burns would not thereby be liable or responsible for such willful or malicious trespass."

The defendants also excepted to the following charge, given at the request of the plaintiff: "If the jury believe from the evidence that the plaintiff acquired any of the goods and chattels described in the complaint, subsequently to the date of the execution of the mortgage executed by the plaintiff to James H. Burns; and that the said goods and chattels, so acquired, were taken by the defendants, then the said mortgage afforded the defendants no defense for taking the said goods and chattels, so subsequently acquired."

The rulings of the City Court above noted are among the errors assigned in this court.

BROOKS & ROY and WHITE & WHITE, for appellants.—(1) If any thing was due on the debt at the time of the seizure, Burns, under his mortgage, had the right to take all of the property conveyed thereby.—*Morrison v. Judge*, 14 Ala. 182; *Bell v. Pharr*, 7 Ala. 807. (2) If Campbell desired to raise the question of usury, he should have filed a bill in equity; and then he would have been compelled to pay lawful interest. He will not be allowed to hold still and treat the defendants as trespassers, for collecting the debt according to the terms of his own contract, which was, at best, only voidable, and which he had never repudiated.—*Pearson v. Bailey*, 23 Ala. 537; *McGehee v. George*, 38 Ala. 323; 1 Jones on Mort. § 640; *Eslava v. Crampton*, 61 Ala. 507. (3) Retaining an account

for a length of time without objection, is an admission of its correctness.—*Langdon v. Roane*, 6 Ala. 518. (4) The agreement between John F. Burns and the plaintiff in reference to the mare which said Burns let plaintiff have, when it was ratified by James H. Burns, became a parol mortgage of the mare to James H. Burns, which was valid and binding between the parties to this suit.—*Morrow v. Turney*, 35 Ala. 131; *Brooks v. Ruff*, 37 Ala. 371; *Shelburne v. Letsinger*, 52 Ala. 96; *Bickley v. Keenan*, 60 Ala. 293. (5) James H. Burns ought to have been allowed to prove that when told by John F. Burns of the seizure, he told him not to keep the goods, but to return them. There is no evidence that James H. Burns authorized, or even knew of the seizure, when it was made, but he was sought to be charged in consequence of a subsequent adoption, or ratification. These declarations were a part of the act itself, *then done*, and ought to have been admitted as explanatory of it. Besides, these words constituted the *very act* of repudiation, which he had a right to prove. (6) To maintain trespass, the plaintiff must have the actual possession, or the immediate right of possession.—*Ledbetter v. Blassingame*, 31 Ala. 495. (7) It is a rule of law that the cause of action must exist at the time the suit is begun. When this suit was brought, the plaintiff had no right of action whatever against James H. Burns. While he may have made himself liable for the trespass by a subsequent ratification, such ratification must antedate the commencement of the suit. (8) The principal is not liable for the willful and malicious trespass of his agent, though done in the course of the principal's business.—*Bondurant v. Bank*, 7 Ala. 830; *Kirksey v. Jones*, 7 Ala. 622; 1 Brick. Dig. pp. 61-2, §§ 133-4. (9) The ratification by the principal of a trespass committed by his agent, will not make him responsible, unless it is ratified with full knowledge of all the facts. 2 Add. on Torts, 1122; *Adams v. Freeman*, 9 Johns. 116; 1 Wat. on Tres. § 28; *Home Machine Co. v. Ashley*, 60 Ala. 496. (10) If Campbell mixed the mortgaged property with other property belonging to him, not covered by the mortgage, that also becomes liable.—11 Met. 493; 2 Johns. Ch. 108; 2 Kent's Com. m. pp. 364-5. (11) If Campbell was not in the actual possession of the goods, and some of them belonged to the statutory separate estate of the wife, she, and not he, could sue for their taking.—Code of 1876, §§ 2371, 2525; Brick. Dig. p. 33, § 205; 52 Ala. 78; 29 Ala. 532; 31 Ala. 447. (12) The mortgage covered after-acquired property; and the legal title to such property resided in the mortgagee so soon as it was acquired; and Burns had the same right to seize it under the mortgage as he did the other property conveyed.—*Thrash v. Bennett*, 57 Ala. 156, and authorities cited. (13) It is the

[Burns v. Campbell.]

evil intention which gives the right to exemplary damages.
Sedg. on Dam. m. p. 455. (14) When smart money is
claimed, evidence of acts done at a different time and place,
and which in themselves constitute a cause of action, is not ad-
missible. It is confined to matters of aggravation attending
the act.—2. Brick. Dig. p. 475, §§ 81-5; 27 Ala. 480; 17 Ala.
391; 28 Ala. 236; 9 Bacon's Abr. 543, 549.

PETTUS, DAWSON & TILLMAN and JOS. F. JOHNSTON, *contra.*
(No brief came to the hands of the reporter.)

SOMERVILLE, J.—The present case is an action of tres-
pass, brought by a mortgagor against the mortgagee and another,
for taking possession of certain personal property, under a
power of sale contained in the mortgage. The seizure was
made in January, 1875, after the law-day of the mortgage, by
order of the defendant, John F. Burns, acting as the agent of
his father, James H. Burns, who is shown not to have originally
authorized the act, but who is sought to be made liable upon
the ground of a subsequent ratification.

1. At the time of this transaction, the principle of law pre-
vailing in this State was, that a mortgagee of chattels could
sustain an action of detinue for them after default, if any por-
tion of the mortgage debt remained unpaid. His right to
recover could only be defeated by showing payment or dis-
charge of *the entire debt.*—*Morrison v. Judge,* 14 Ala. 182; *Bell
v. Pharr,* 7 Ala. 807. It is immaterial that this principle has
been since modified by legislation, so as to authorize the de-
fendant to put in issue, in such cases, the amount due on the
mortgage debt.—Session Acts, 1880-81, p. 39. If the mort-
gagee would be entitled to sue in detinue under such circum-
stances, the right must be based upon a general or special prop-
erty in the goods sought to be recovered, coupled with the right
of immediate possession.—*Gafford v. Stearns,* 51 Ala. 434;
1 Chitty's Plead. 121.

If, therefore, at the time the mortgagor's goods were seized,
there remained *any part* of the mortgage debt unpaid, the
mortgagee's right to take possession of *the whole* of the mort-
gaged property under the power of sale granted in the instru-
ment, would not be affected by reason of the partial payments
previously made, unless such be the fair inference from the
language of the mortgage. In the present case, we discover no
words or language qualifying or limiting the general power to
take possession of the entire property, after default.

2. It was not competent for the plaintiff, in this action of
trespass, to assail the mortgage debt for *usury.* Usurious con-
tracts in this State are not absolutely void, but merely *voidable*

[Burns v. Campbell.]

to the extent of the interest.—Code of 1876, § 2092. The defense must be specially pleaded, and is not available under the general issue.—*Masterson v. Grubbs*, 70 Ala. 406; *Munter v. Linn*, 61 Ala. 492. If a debtor elect to avoid a debt for usurious taint, he may do so, by special plea, in a suit brought by the creditor to recover judgment against him for the enforcement of the debt (Code of 1876, §§ 2092, 3010,); or he may, in a proper case, resort to a court of equity and obtain relief upon condition of paying the principal and legal rate of interest. *McGehee's Adm'r v. George*, 38 Ala. 323; *Uhfelder v. Carter's Adm'r*, 64 Ala. 527. But usury in a debt secured by mortgage, does not affect the validity of the mortgage, and is not available, at law, in an action founded on the mortgage.—*Kelly v. Mobile B. & L. Association*, 64 Ala. 501; *Bradford v. Daniel*, 65 Ala. 133.

The mortgage executed by plaintiff to James H. Burns, one of the defendants, was introduced in the present case as evidence of defendant's title to the property seized under it. Neither the mortgagee, nor his agents, could be made trespassers by an effort on plaintiff's part to collaterally assail the mortgage debt as usurious, thus imparting retrospective operation to an election as to usury thus irregularly made. All the evidence, which was admitted in the trial below looking to this end, was irrelevant, and should have been excluded.

3. It is contended that the mortgage debt has been entirely extinguished by the proceeds of certain cotton shipped by the mortgagor, Campbell, to the mortgagee, Burns, and sold by the latter, or under his authority, as a cotton factor and commission merchant. If this be true, and the fact be shown satisfactorily by the evidence introduced on the trial, then such payment would discharge the mortgage, and entirely extinguish the lien intended to be secured on the property conveyed by it. Herman on Chat. Mort. § 168; *Dryer v. Lewis*, 57 Ala. 551. In such event the mortgagee would be chargeable as a trespasser, if he sought, either through himself or his agent, to seize the mortgaged property, for he could not show title under a satisfied mortgage, or justify taking possession under a power conferred by it.

The mortgage in question was executed by the appellee on March 3, 1874, and was given to secure *a note* for one hundred and twenty-five dollars, payable to James H. Burns, October 1, 1874; also such *advances* as Burns, the mortgagee, might make to Campbell, the plaintiff, during the year, to enable him to cultivate certain lands, including commissions of two and a half per cent. for selling certain cotton agreed to be shipped by plaintiff to Burns. It conveyed all the mortgagor's crop of cotton and corn, to be grown during the current year in Dallas.

county, together with "*all his effects of every description,*" including one sorrel mare described by name. In ascertaining whether the morgage debt was paid or not, which was a vital issue in the case, it was of course competent to investigate the account of Burns as rendered against Campbell. The proceeds of the cotton, which was subject to the lien of the mortgage, less all proper charges against it, would be a fund in the hands of the mortgagee, which the law, in the absence of a contrary agreement, would appropriate to the payment of the mortgage debt.—*Schiffer v. Feagin,* 51 Ala. 335. Among these proper charges, liable to be deducted, would be included the commissions agreed to be paid for selling the cotton; and no collateral investigation into their usurious character could be permitted in this action.

4. For all articles of merchandise, advanced by Burns to Campbell, he was entitled to charge such prices as may have been agreed on; or, in the absence of any agreement, a fair and reasonable market valuation, as estimated at the time and place of sale. What the prices of the goods were, as paid by Burns at wholesale purchase, at another time or place, was entirely immaterial. Fair and honest dealing is all that the law exacts from the mortgagee, under such circumstances, in his transactions with the mortgagor. While it is his duty, on the one hand, not to *oppress,* he is, on the other, under no obligations to *confer benefactions.*

5. If a debtor, to whom an account is rendered, either admits its correctness, or retains it and makes no objection within a reasonable time, he will be bound by it as an *account stated,* his silence, in the latter case, being presumptively construed into an acquiescence in its justness.—*Langdon v. Roane's Adm'r,* 6 Ala. 518. So if *one item only is objected to,* this is an admission of the correctness of the other items to which no objection is interposed.—2 Greenl. Ev. § 126; *Chisman v. Count,* 2 M. & Gr. 307. If, therefore, Burns rendered his account to Campbell, as the evidence tends to show, and the latter, several days afterwards, objected only to the item charged for *rails,* this would be an implied admission of the correctness of the rest of the account.

6. It was no valid objection to the correctness of the account that one of the items advanced to plaintiff by the mortgagee, James H. Burns, was a horse belonging to John F. Burns, provided the latter consented to such disposition of his property. And even though the transaction was the execution of a mere agency, no one but the principal could interfere to prevent the enforcement of the contract in the agent's name, whether by suit or otherwise.—Bishop on Contracts, § 356; 1 Brick. Dig. p. 67, §§ 225 *et seq.* And the agreement between the parties, that

the written mortgage already executed should be extended so as to cover the horse, would at least be so far valid as to operate, *inter partes*, as a *parol* or *verbal mortgage*, without prejudice to the rights of creditors or purchasers not having notice. *Brooks v. Ruff*, 37 Ala. 371; *Gafford v. Stearns*, 51 Ala. 434; Herman on Chat. Mort. §§ 19, 27.

7. Nor was it a matter of concern to Campbell, that the mortgagee, who was a commission merchant, employed the services of a broker to sell the cotton consigned to him, and procured such sale to be made at a commission less than that agreed to be paid by Campbell. The legal maxim, that an agent can not delegate his authority to a sub-agent, has no application to such a case. It can be invoked only by the principal when sought to be charged by the act of the sub-agent. *Harralson & Co. v. Stein*, 50 Ala. 347; Ewell on Agency (Evan's Ed.), p. 53, *note*. The plaintiff does not here seek to disavow the act of the sub-agent, the broker, in selling his cotton; nor is there any effort made to impugn his skill- or faithfulness. The contention relates only to the compensation for services charged by *the agent*. The maxim in question, furthermore, does not prohibit the employment of *subordinates*, but rather of *substitutes*.

8. The circumstances under which a mortgagee may take possession of personal property conveyed by the mortgage, under authority of a power of sale conferred by the instrument, are fully discussed in the case of *Street v. Sinclair, ante,* p. 110. It was there held that, after default, he could execute the power by entering upon the premises of the mortgagor and taking peaceable possession of the mortgaged property, without consent of the mortgagor, provided he thereby committed no breach of the peace. We have no disposition to depart from the doctrine of that case.—Herman on Chat. Mort. p. 209, § 96; *McNeal v. Emerson*, 15 Gray, 384; *Satterwhite v. Kennedy*, 3 Strob. 457; *London Co. v. Drake*, 6 C. B. (N. S.) 798. The evidence here shows that the mortgaged goods were on the platform of the railroad depot ready to be shipped to Montevallo in another county. They are shown to have been in the custody of one Sharpe who had acted as cartman in hauling them to the depot by request of plaintiff's wife. It is not shown that he either consented or objected to the seizure under the mortgage. Under these circumstances, if any portion of the mortgage debt remained unpaid, an agent of the mortgagee could lawfully take possession of the mortgaged property without becoming a trespasser, if he in no manner subjected himself to a violation of the criminal law. Jones on Chat. Mortg. § 434; *Nichols v. Webster*, 1 Chand. (Wis.) 203; *McNeal v. Emerson*, 15 Gray, 384; Herman on Chat. Mortg. § 96, *supra*.

9. The evidence tends to prove that the *mortgaged goods were commingled* with some of the *property of the mortgagor's wife*, and with *after-acquired* property of the mortgagor himself, which, it is insisted, the mortgagee had no lawful right to seize. According to the ordinary principle governing *confusion of goods*, if the goods of one person be willfully, or, through want of proper care on his part, so mixed or confused with the goods of another that they can not be distinguished, the latter is entitled to the whole, unless he consented to the act.—Walker's Amer. Law (5th Ed.) 343; *Smith v. Sanborn*, 6 Gray 134. And this doctrine applies to mortgaged goods, such *confusion* making the whole, *prima facie* at least, subject to the lien and operation of the mortgage.—Herman on Chat. Mort. p. 84, § 43; *Hamilton v. Rogers*, 8 Md. 301.

10. Supposing that there was no confusion of goods within the above rule, it is still insisted by appellant's counsel that *the after-acquired property* of the mortgagor, Campbell, passed to the mortgagee under the express terms of the mortgage. The granting clause conveys " all my [the mortgagor's] effects of every description." The *habendum* clause authorizes the mortgagee to take possession of "the above described property, or *any other effects* of mine [the mortgagor's] wherever found." The principle has been often decided in this State that property having a potential existence can be the subject of a valid grant, sale, or mortgage. An owner or tenant of land, for example, may mortgage a crop not *in esse*, and to be planted and grown *in futuro* on such premises, but such a conveyance creates only an *equitable title*, as distinguished from a legal one.—*Grant v. Steiner*, 65 Ala. 499, and cases cited. If a tenant should mortgage such crops as might be raised or grown by him on some indefinite place which he expected to rent, the conveyance would, we apprehend, be inoperative and void, as an attempted conveyance of a mere possibility or expectancy, not coupled with any interest in, or growing out of property.—*Skipper v. Stokes*, 42 Ala. 255; *Purcell v. Mather*, 35 Ala. 570; *Booker v. Jones*, 55 Ala. 266. The maxim applies " *qui non habet, ille non dat.*" So a mortgage of subsequently acquired property, especially by general terms of description, which is not the product, increase or accretion of something already owned by the mortgagor, amounts to nothing more than a mere agreement to give a further mortgage. It confers no specific lien on such after-acquired property.—Herman on Chat. Mort. § 46; *Anderson v. Howard*, 49 Ga. 313; *Otis v. Sill*, 8 Barb. 102; 2 Kent's Com. 468.

11. The court allowed proof of damages in the present case for certain articles of personalty belonging to the *wife* of the plaintiff, as a part of her statutory separate estate, which were taken at the same time with the plaintiff's property. In the

admission of this evidence, we are of opinion, there was error. It is true that the *gist* of the action of trespass is an injury to the plaintiff's possession. But the possession of the husband, so far as concerns the wife's statutory separate estate, is generally referred to his representative capacity as her trustee, and in the absence of an actual custody by him, the general property in the wife would certainly draw to it the possession, where there is no intervening adverse right of enjoyment. Be this as it may, the action here has reference to the *corpus* of the wife's property as distinguished from its *use*. The claim is for damages in taking the property itself, and no question arises as to the rents, income and profits as such. Where this is the case, the statute has been construed to require the wife to sue alone.—Code, § 2892; *Pickens & Wife v. Oliver*, 29 Ala. 528. It has been held by this court that, under the provisions of the Code, the wife may sue alone in *trover* for her statutory separate estate.—*McConeghy v. McCaw*, 31 Ala. 447. So she may likewise sue in an action of *unlawful detainer*, as decided in *Hurst v. Thompson*, 68 Ala. 560.

12. The present suit was instituted prior to the time of the alleged ratification of the agent's act, or trespass, by the principal. If the principal, James H. Burns, adopted the agent's act, this adoption was not until *after the suit was commenced* against the latter. Did the court err in admitting the principal to be made a party by amendment of the complaint so as to charge him in this action, the original action being only against the agent? The statute authorizes the amendment of the complaint by striking out, or adding either new parties plaintiff, or new parties defendant, upon such terms and conditions as the justice of the case may require.—Code, 1876, § 3156. This statute must, of course, be construed to mean that only such parties defendant may be added as were liable in the given cause of action at the time the summons was issued, which is the commencement of the suit.

There is no difficulty about the general rules of law governing the ratification of an agent's unauthorized act by a principal. It is settled that where such an agent, acting *in the name and for the benefit of his principal*, commits an unindictable trespass *de bonis asportatis*, or, in other words, a trespass which is voidable merely and not wholly void, as imposing a civil and not a criminal liability upon the perpetrator, the principal, after being fully informed of its tortious nature, may adopt it as his own act, and such ratification ordinarily binds the principal to the same extent, and holds him to the same civil responsibilities as if he had originally authorized it. And for many purposes the ratification will relate back to the date of the unauthorized act so as to constitute the principal a tres-

[Burns v. Campbell.]

passer *ab initio*.—Ewell's Evan's Agency, \*64, \*70–71; Coke's Inst. IV, 317; 1 Brick. Dig. p. 59, § 91; *Blevins v. Pope*, 7 Ala. 371; Story on Agency, §§ 239, 244; *Chapman v. Lee*, 47 Ala. 143; *Mound City Ins. Co. v. Huth*, 49 Ala. 529; 1 Waterman on Trespass, § 28. This, however, is upon the *doctrine of relation*, which is a mere legal fiction, having its origin in necessity, and which is never allowed to prevail except for the advancement of right and justice.—*Jackson v. Ramsay*, [3 Cow. 75.] 15 Amer. Dec. 242, 246; *Pierce v. Hall*, 41 Barb. 142; *Menvill's case*, 13 Co. 19. It can not be applied so as to authorize one to be made a party defendant to a suit, by amendment, when the act creating his liability was done after the suit was instituted. All pleas setting up defenses to an action have reference to the time when the action was commenced, excepting pleas to the further maintenance of the action, and pleas *puis darrien continuance*. If a defendant be not liable on the date when the suit is commenced, he can not be made liable at all *in that action* by any subsequent act of adoption or ratification. To create such retrospective liability, with its attendant costs and consequences, would be to pervert the doctrine of relation to an unjust and improper end.

If James H. Burns, therefore, did not originally authorize the alleged trespass, and did not adopt or ratify it until after this action was brought against John F. Burns, he could not be made a party defendant by amendment of the complaint, as seems to have been done in the court below, at least so as to make him chargeable in this action.—*Donaldson v. Waters*, 30 Ala. 175.

13. But to hold the principal responsible for damages, in such cases, it must appear that he ratified the wrongful act of the agent with a full knowledge of its tortious character.—*Street v. Sinclair, supra ; Lienkauf v. Morris*, 66 Ala. 406. The mere appropriation of the fruits of the trespass, without such knowledge, would not be sufficient.—*Herring v. Skaggs*, 62 Ala. 180.

14. Where the relation of agency exists, and the principal derives a benefit from an act beyond the scope of the agency, the principal will be held to have ratified such unauthorized act by *acquiescence*, if, after being fully informed of what has been done, he fails to express his dissatisfaction within a reasonable time.—*M. & M. Railway Co. v. Jay*, 65 Ala. 113. There are many cases, however, where mere silence, or non-interference will not amount to a ratification.—Whart. Agency, § 86; 2 Greenl. Ev. § 66. Where the relation of agency does not exist when the act is done, but the act is that of a mere volunteer awaiting ratification, the silence of the principal will not be so readily construed into a ratification, unless, perhaps, in

[Burns v. Campbell.]

cases where it might operate to the prejudice of innocent par-
ties.—*Saveland v. Green*, 40 Wis. 431; *Ward v. Williams*, 26
Ill. 451.

15. It was clearly competent to prove the declarations of
James H. Burns, on being first informed of the seizure of the
goods, ordering them to be returned to the plaintiff, and also the
message to his acting agent, instructing him to have nothing
more to do with them. They were in the nature of verbal acts
and tended to show a repudiation of the agent's act.—*Moon
u. Towers*, 8 C. B. (N. S.) 611; *Henderson v. The State*, 70
Ala. 23.

16. The question propounded to the witness, however,
whether, on being first informed of the seizure, " he *approved*
or *disapproved* of it," would be irrelevant, if propounded with
the view of eliciting a mere *mental* approval, unaccompanied
with acts or words. The meaning of the interrogatory being
ambiguous, and it not affirmatively appearing whether the an-
swer would have been legal or illegal evidence, we can not say
the court erred in disallowing it.—*Stewart v. The State*, 63
Ala. 199.

17. If the defendant James H. Burns, in good faith, and by
suitable acts and declarations, repudiated the seizure made by
his son, the law would not make it incumbent on him to actively
interfere to compel restoration of the goods to the plaintiff, un-
less they had come into his custody, or under his control. His
failure to counsel restoration, however, or to re-assert control
over the mortgage under which the seizure was made, could be
looked at by the jury, if satisfactorily proved, as tending, in con-
nection with other facts, to prove acquiescence, being weaker
or stronger evidence to this end according to circumstances.
The law, however, requires, with good reason, "substantial
proof of a ratification" in all cases of trespass.—Ewell's
Agency, *64.

18. The written notice of the sale, and the sale itself,
of the mortgaged goods were but cumulative evidence of the
intention of the party taking the goods, and as such a part of the
*res gestæ* of the alleged trespass. It was, therefore, properly
admitted in evidence, in the nature of an admission, and as
shedding light on the dominion over the goods previously as-
serted.

19. The measure of damages in actions for trespass to goods,
where the taking is unlawful without more, is generally *the value
of the goods*, or the amount of injury done to them, as the case
may be, *with interest* to the date of judgment.—*Lienkauf v.
Morris*, 66 Ala. 406.

20. But when the taking is perpetrated in a rude, wanton,
reckless, or insulting manner, or is accompanied with circum-

[Burns v. Campbell.]

stances of fraud, malice, oppression or aggravation, or even with gross negligence, the party injured is entitled to recover exemplary damages. These principles are too well'settled to require discussion.—*Lienkauf v. Morris*, 66 Ala. 406; *Hair v. Little*, 28 Ala. 236; *Roberts v. Heim*, 27 Ala. 678; *Devaughn v. Heath*, 37 Ala. 595; *Parker v. Wise*, 27 Ala. 480; *Durr v. Jackson*, 59 Ala. 210; *S. & N. R. R. Co. v. McClendon*, 63 Ala. 266.

21. The rule is, that, where several defendants are sued in tort for damages, the malice or other evil motive of *one* can not be matter of aggravation, or ground for vindictive damages against the *other*.—Wood's Mayne on Damages, p. 594, § 624. Hence, principals are not generally held liable for such damages by reason of the evil motive of an agent, unless the act·of the agent was fully ratified with a knowledge of its malicious, aggravating, or grossly negligent character; or these matters of aggravation were probably consequent on the doing of the wrongful act ordered by the principal; or unless the agent was employed with a knowledge of his incompetency.—*Leinkauf v. Morris*, 66 Ala. 406, 415; *Pollock v. Gantt*, 69 Ala. 373; *Kirksey v. Jones*, 7 Ala. 622; Fields' Law Damages, §§ 86, 87; Woods' Mayne on Dam. p. 57, § 48; *Carmichael v. W. & L. Railway Co.* 13 Ir. L. R. 313.

22. The *letter* signed John F. Burns, bearing date January 16, 1875,—the day of the seizure of plaintiff's goods—which is shown to have been received by the plaintiff through due course of mail, would be relevant against the author, if satisfactorily proved to have been in his handwriting, or shown to have emanated from him. Its contents evince an unfriendly feeling, and it was competent to show malice or an evil motive on the part of the writer, which may have entered into, or given color to the present transaction. And the same may be said of the *endorsements* on the envelope.—1 Greenl. Ev. § 53.

23. It was not competent, however, to introduce in evidence the record of the criminal prosecution instituted by James F. Burns against the plaintiff, about the time of the seizure. We find no evidence in the record tending to show that he originally authorized the alleged trespass, and, if liable at all, it is upon the ground of his having ratified the act. of an agent. All evidence relating to damages "must be confined to the *principal transaction* complained of, and to *its attendant circumstances* and natural results; for these alone are put in issue."—2 Greenl. Ev. § 268. It is true that the commencement of such a prosecution may have tended to show malice against the plaintiff on the part of the prosecutor, but it could not constitute a circumstance of aggravation accompanying the taking, in the absence of all evidence of original participation

[Burns v. Campbell.]

in the act by the prosecutor. It could not be a part of the transaction alleged to be ratified, because it had no connection with it. Nor could such malice, standing alone, authorize the inference that the principal conferred an original or previous authority upon the agent to make the seizure.

24. The court erred in allowing proof to be made, by way of aggravation of damages, that plaintiff had *a family*, consisting of a wife, and several minor children, such evidence being irrelevant to the issues on trial. Nor would it be competent to show their condition as to clothing, bedding, or other apparel or furniture, while at Montevallo, without proof of knowledge or notice on the part of John F. Burns, at the time he seized the property in question, in which were included articles of the above description. The knowledge of such facts, or any information charging him with notice of them, would have a tendency, however, to show an evil motive, such as to constitute a circumstance of oppression or aggravation.

25. The consideration of *motive* is always of the highest importance as affecting the question of exemplary or vindictive damages. *Good or bad faith*, therefore, constitutes a vital issue in all cases of trespass, where such damages are claimed, although it may have no bearing on the question of *actual* damages. Exemplary damages are both punitive and preventive in their purpose, as well as compensatory. They are not only intended to compensate the plaintiff for his actual loss, but are also inflicted "for example's sake, and by way of punishing the defendant."—Sedg. Dam. 459, 464; *Lienkauf v. Morris* 66 Ala. 406, *supra; Kirksey v. Jones,* 7 Ala. 622. Hence, in such cases, it is competent to show that the defendant acted with *the honest belief* that he owned the goods, or had a lawful right to take them.—*Hawk v. Ridgway,* 33 Ill. 473; *Hillman v. Baumbach,* 21 Tex. 203; *Green v. Craig,* 47 Mo. 90; Woods' Mayne on Dam. pp. 58–59, 519. It was permissible, under this principle, to prove that John F. Burns had good reason to believe, and did believe, that a part of the mortgage debt remained unpaid, and that the goods seized under the mortgage belonged to the plaintiff and were included in the mortgage. But this evidence would be admissible only in mitigation of exemplary, and not of actual damages.

26. In the case of *Sylvester v. The State, ante, p.* 17, we held that a conviction of the offense of petit larceny renders a witness infamous, and, therefore, incompetent to testify in a court of justice. Where the value of the property stolen does not exceed the sum of ten dollars, justices of the peace, in their respective counties, have jurisdiction of the offense, to be exercised concurrently with the county courts.—Code, § 4628; Clark's Man. Cr. L. § 1862. The witness, Hill, was, therefore,

[Burns v. Campbell.]

rendered incompetent, on proper proof being made of his conviction of the offense of petit larceny by a justice's court having jurisdiction.

27. A justice's court not being a court of record, a *certified transcript* of a judgment rendered by it is not legal evidence, unless made so by statute, and this is not authorized except as proof of judgments rendered in civil causes. Section 3634 of the Code, making a certified statement of a justice's judgment presumptive evidence of the fact, clearly has no reference to judgments of conviction in *criminal* causes, but must be confined to civil proceedings. When it is desired to prove a judgment of conviction, or other criminal proceeding, it may be done by producing the original papers and docket, sustained by competent evidence of identity, and accompanying proof of their verity.—*Kennedy v. Dear*, 6 Port. 90; *Scott v. McCrary*, 1 Stew. 315; Freeman on Judgt. § 410. Or such proceedings may be proved by *sworn copies* of them, compared by any competent witness.—*Jones v. Davis*, 2 Ala. 730. Under these views the court did not err in sustaining plaintiff's objection to the admission of the justice's transcript, which was not self-proving.— *Watson v. The State*, 63 Ala. 20.

28. Nor can we see that the court ruled erroneously in excluding the book which was proved to be the record of criminal cases tried by the mayor of Selma. It does not appear from the bill of exceptions whether the witness Hill, whose infamy is sought to be established, was convicted by the mayor sitting *ex officio* as a justice of the peace, of an offense against the State of Alabama, or whether he was convicted merely of the violation of a *municipal ordinance*. If only of the latter offense, the conviction has been held by this court not to render the witness infamous, and, therefore, his competency would be unaffected.—*Cheatham v. The State*, 59 Ala. 40.

29. The record shows that, by consent of parties, all matters which could be specially pleaded was authorized to be given in evidence under the general issue. This was held in *Folkes v. Collier*, decided at the December term, 1881,* to be tantamount only to a plea of not guilty, or of the general issue. The defendants could, therefore, derive no benefit from this agreement which they could not have enjoyed under the general issue.

Other rulings are raised and discussed, but we deem their consideration unnecessary.

The judgment of the City Court is reversed and the cause remanded.

---

*This case has never been reported.—REP.