# Fuller *v.* The State.

*Indictment for Murder.*

1. *Homicide; sufficient defense; provocation; case at bar.*—On a trial under an indictment for murder, where the evidence shows that the deceased had been employed by the defendant to drive a mule, which he had rented from another person, that upon defendant discharging the deceased from his employment, he went to the person from whom

the mule was rented, and brought back to the defendant a note from such person, telling him to let the deceased drive the mule or else send the mule home, and that upon the defendant's refusal to allow the deceased either to drive the mule or take it away, the deceased declared his purpose to take the mule and proceeded to unhitch him, which the defendant resisted by physical force, and thereupon a fight ensued, in which the defendant stabbed the deceased, from the effects of which wound he died,—a charge instructing the jury that "whether or not deceased was a trespasser in attempting to take the mule would depend upon whether or not" the person from whom the mule was rented, "had the right to take the mule, or whether or not" such person "had given deceased authority to take the mule from the defendant, and whether or not deceased was acting under such authority," is erroneous; since, without legal process the possession of the mule could not be forcibly taken, whether the deceased or the person from whom the mule was rented was entitled to the possession or not.

2. *Same; same; same.*—In such case, where there was evidence that upon the deceased announcing his intention of taking the mule away, the defendant made to the deceased a profane threat to take his life or do him great bodily harm, charges to the jury asserting the right of self-defense, which ignore this tendency of the evidence, are erroneous; since it was for the jury to determine what effect, if any, the defendant's threat had in provoking the difficulty.

3. *Impeachment of witnesses; charge to the jury.*—When there is no attempt to impeach State witnesses in the trial of a criminal case, a charge which instructs the jury that no presumption of good character arose from the fact that the attempt was not made, is properly refused.

APPEAL from the Circuit Court of Cleburne.

Tried before the Hon. GEORGE E. BREWER.

The appellant was indicted, and tried for the murder of Thomas Henry, was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for sixty years. The tendencies of the evidence are sufficiently stated in the opinion. The charge of the court to which exception was reserved is copied in the opinion.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (13.) "If the jury believe from the evidence in this case that deceased was attempting to take the mule away from defendant's work, and was attempting to unloose the mule from defendant's machine for the pur-

pose of taking it away from defendant's work, against the express objection of defendant, and that defendant undertook to prevent deceased from unloosing the mule from the said machine, by the use of reasonable force, and did not use or attempt to use any unreasonable force in so doing, and that deceased turned upon defendant and attempted to cut him with a knife in such close proximity as to render retreat hazardous, and it reasonably appeared to defendant that he was in danger of his life or of great bodily harm at the hands of deceased, then defendant had a right to strike in defense of himself, even to the taking of the life of his assailant, if necessary to free himself from danger." (14.) "The court charges the jury that the deceased had no right under the law to take the mule from defendant's work without defendant's consent, and against defendant's direction, and if the jury believe from all the evidence in this case that the deceased did attempt so to take the mule away from defendant's work then the deceased was a trespasser and defendant had a right to use a reasonable amount of force to prevent deceased from so taking the mule ; and if the jury believe from all the evidence that all defendant did was to use a reasonable amount of force, and that then the deceased turned and attempted to cut defendant with his knife, and that defendant could not then safely retreat, and that the defendant struck the fatal blow under the circumstances, then you should find the defendant not guilty." (18.) "If the jury believe from the evidence after a full and careful consideration of all the evidence in the case that the defendant had the mule hired to work his machine, and that he had deceased employed to drive the mule, and that the mule was attached to and pulling the machine, and that the defendant had on the morning of the difficulty discharged the deceased from his employment, and that after his discharge he attempted to unloose the mule from the machine for the purpose of taking the mule away against defendant's objection, and that deceased refused to desist when so directed by defendant, then defendant had the right to use sufficient force to prevent deceased from unloosing and taking away the mule, and if in so doing defendant used only a reasonable amount of force against deceased, and deceased then turned and attacked defendant with a deadly

[Fuller v. The State.]

weapon in such close proximity as to render retreat hazardous or apparently so to a reasonable mind, and was attempting to use such weapon upon defendant, then the defendant had a right to strike in defense of himself even to the taking of the life of his adversary, if necessary to free himself from danger." (29.) "If the jury believe from the evidence that defendant discharged deceased from his employment on the morning of the homicide, and that deceased then left the works of defendant, and afterwards returned to the works of defendant and began to take the mule which defendant was working loose from the machine, and was ordered by defendant to desist and refused to desist when so ordered, then defendant had the right to use the force necessary to prevent the deceased from taking away the mule provided he used no unreasonable force in so doing, and if while attempting to prevent deceased by the use of such reasonable force, from taking away the mule, the deceased turned and attempted to cut defendant with a knife, and in such close proximity as to have rendered it apparently hazardous for defendant to have attempted to retreat, then defendant was authorized to use so much force as would be necessary to defend himself from his antagonist, even to the taking of his life." (30.) "There is no presumption that the character of any witness for the State is good arising from the fact that the defendant did not place a witness or witnesses on the stand to show that the character of such witness is bad." (33.) "If the jury believe from the evidence that defendant had the mule hired to work to his machine, and also had deceased employed to drive the mule, and that he had discharged deceased, and told him to leave the work, and deceased had gone away from defendant's machine, and defendant ordered deceased to desist, and deceased refused to desist and proceeded to take the mule loose from the machine, then defendant had a right to use such a reasonable amount of force as would be sufficient to prevent the deceased from taking the mule, and if then the deceased turned and assaulted defendant with a knife in such dangerous proximity as to render retreat hazardous, the defendant had a right to strike in defense of himself, even to the taking of the life of his assailant, if necessary to free himself from danger." (A.) "The court charges the

[Fuller v. The State.]

jury that when Scott hired the mule to defendant by the day, and that mule was carried to defendant's place of business to do a day's work, and then placed in the custody and control of defendant, if the evidence shows that it was placed in his custody and control, he, defendant, then had the right to retain its custody and control during that day, and Henry did not have the right to take the mule away without defendant's consent." (B.) "The court charges the jury that there is no evidence as to whether the defendant hired Henry and the mule together for one price or separately for separate prices." (C.) "The court charges the jury that under the contract of hire between Scott and defendant, defendant had the right to control both the mule and Henry. And unless the evidence shows that Henry had the consent of defendant to take the mule away, he was in the wrong in attempting to do so, if the evidence shows he was so attempting."

MERRILL & BRIDGES, for appellant.—The right to resist a trespass upon one's property is undoubted, the extent to which the resistance may be carried depending upon the character of the trespass.—McLain on Crim. Law, § 142, and note 5; *Williams v. State*, 44 Ala. 41; *Ledbetter v. State*, 26 Tex. App. 247; *People v. Payne*, 8 Cal. 341; *People v. Dann*, 53 Mich. 490; *Simpson v. State*, 59 Ala. 1. An oral explanation to a charge requested in writing by defendant, is improper.—*People v. Payne*, 8 Cal. 341.

WILLIAM C. FITTS, Attorney-General, for the State.

HEAD, J.—The court, of its own motion, instructed the jury as follows: "Whether or not deceased was a trespasser in attempting to take the mule, would depend upon whether or not Scott had the right to take the mule, and whether or not he, Scott, had given deceased authority to take the mule from defendant, and whether or not deceased was acting under such authority." The defendant excepted to the giving of this instruction.

The evidence tended to show that the defendant was engaged in operating a machine called a stump-puller. It was operated by means of a lever to which a mule was hitched, the lever being drawn around in a circle by

[Fuller v. The State.]

the mule, driven by a person. Shortly before the homicide, the deceased had been engaged, under the employment of the defendant, in driving the mule. The mule being used was hired by the defendant from one Scott. On the morning of the homicide, after the deceased had hitched the mule to the lever for the purpose of pursuing his work, the defendant became offended at some remark made by deceased, and thereupon discharged deceased from his employment. The deceased left the place of the work and went to the house of Scott, the owner of the mule, and soon returned with a note from Scott addressed to the defendant in the following words: "October 15, 1895. Mr. Fuller, Let bearer, T. Henry, drive my mule until you hear from me further. If this does not suit you, send the mule home. [Signed] W. Scott." This note was delivered by deceased to the defendant, who refused to allow deceased either to drive the mule, or take it away. The evidence also tended to show that the deceased then declared his purpose to take the mule, and proceeded to unhitch the animal from the machine, and as he did so, the defendant, by physical force resisted his effort, whereupon a scuffle and fight ensued between the parties in which the defendant stabbed the deceased with a knife so that he died.

In view of this evidence it is manifest that the instruction above set forth was erroneous. The mule being in possession of the defendant, who was, at the time, present insisting upon his right to retain such possession, and forbidding molestation thereof by the deceased, the deceased had no lawful right to forcibly take possession from the defendant. So that, it was not a question, necessarily, as to who was legally entitled to possession of the mule at the time. If Scott was entitled to reclaim possession, at that time, he had his legal remedy. He nor his agent had any right to take the law in his own hands and retake possession of the mule under circumstances calculated to cause a breach of the peace.—*Burns v. Campbell*, 71 Ala. 271.

There was evidence tending to show that after the deceased declared his purpose to take the mule from the defendant, the defendant made to the deceased a profane threat to take his life, or do him great bodily harm. This testimony was sufficient to go to the jury for them to determine whether or not it had, in some degree, the

effect of provoking the difficulty. Charges 13, 14, 18, 29, 33, requested by the defendant were faulty in ignoring this feature of the evidence. They may be subject to other defects; and further, the record shows they had been substantially given by the court in other written requests of the defendant.

There was no question before the jury, arising upon the trial of the cause, touching the subject of the character of those witnesses of whom no impeachment was attempted. The court was, therefore, under no duty to give the jury instructions on that subject.

Charge "A" was abstract in some of its features, and properly refused for that reason.

The court was under no duty to make the statement to the jury proposed by charge "B."

What we have said above in reference to the oral instruction of the court, will point out the inaptness of charge "C" requested by defendant.

For the error in giving said oral charge the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.